IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Cincinnati Bell Telephone Company, | : | |
| | : | Case No. 1:08-cv-033 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER DENYING MOTION TO |
| Communications Workers of America | : | DISMISS |
| AFL-CIO, CLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

This matter comes before the Court on Defendants' Motion to Dismiss (doc. 3) pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion

is **DENIED**.

I.      **FACTUAL ALLEGATIONS**

This summary of the factual allegations is derived from Plaintiff's Complaint and

Petition to Vacate Arbitration Award (doc. 1) and the exhibits thereto.  Plaintiff Cincinnati Bell

Telephone Company ("the Company") and Defendants International Union Communications

Workers of America, AFL-CIO, CLC, Communications Workers of America Local 4400, AFL-

CIO, CLC, and Communications Workers of America Local 4401, AFL-CIO, CLC (collectively

"the Union") are parties to a collective bargaining agreement ("CBA") effective from May 8,

2005 to May 10, 2008.  The CBA contains a grievance procedure culminating in arbitration.  The

CBA provides that the decision of an arbitrator is to be "final and binding."  (CBA, Art. VII,

sect. 1(d).)[1]  Additionally, the CBA provides that the arbitrator has "no power to add to, or

---

[1] The CBA is attached to the Complaint as Exhibit A (doc. 1-2).

1

subtract from, or modify any terms of this [CBA] or any agreements made supplementary thereto."  Id.

Part D-12.01 of the CBA provides:

Whenever in the judgment of the Company there exists a need for a program of force adjustment, including part-timing and/or force adjustment downgrades, affecting regular employees in any work group or groups, the Company agrees to give the Union thirty (30) days written notice of its intention and to afford the Union this period of time to be heard thereon.  The notice to the Union of the Company's intention to adopt a program of force adjustment shall remain in force for a period of six (6) months beginning on the date of the notice to the Union.

(CBA, part D-12.01.)

In a letter dated November 30, 2006, the Company informed the Union that it was implementing a force adjustment pursuant to Part D-12 of the CBA to reduce operational expenses.  The force adjustment included temporarily reducing certain employees from forty hours of scheduled work per week to thirty-five hours of scheduled work per week.  The Company and the Union engaged in discussions and negotiations over the implementation of the reduction in hours, but no agreement was reached.  The Company implemented the reduction in hours effective January 1, 2007.  The Company did not reclassify the affected full-time employees as part-time.  The affected employees were notified by letter of the change and of the Company's intent to revert to a forty-hour schedule at the end of the first quarter of 2007.

The Union grieved the reduction in hours and the grievance was heard in arbitration before Arbitrator Marvin J. Feldman on September 20, 2007.  The Union's position before the Arbitrator was that the Company could not reduce the affected employees' hours without reclassifying the employees as "part-time," a classification with certain benefit and service calculations under the CBA.  The Company's position was that the part-time provisions of the

2

CBA were not implicated because the Company continued to classify the employees as full-time despite the hours reduction.

Arbitrator Feldman issued his Opinion and Award on November 23, 2007.[2]  In his decision, he made reference to a document entitled the Employment Security Letter Agreement, a supplementary agreement to the CBA.  (Opinion and Award at 9, 12-13; CBA p. 98.)  The Employment Security Letter Agreement provides in relevant part that "prior to the implementation of a force adjustment program, involving downgrades or layoffs in any job classification or title, the Company will make every administrative effort to alleviate the force surplus to avoid the need for the force adjustment program."  (Id.)  After referencing the Employment Security Letter Agreement, the Arbitrator held as follows:

> Full timers who have their full time scheduling of forty hours per week schedule cut should, under the reading of the contract, have the same benefits as laid off and downgraded employees, i.e., administrative actions on the part of the company to determine if full time schedules need to be cut.  The company in this matter did not take any administrative action to determine if the hours were in fact needed [sic] to be cut.  Doing away with full time employees without any other efforts on the part of the company in forestalling or alleviating such action is tenement [sic] to undermining the collective bargaining unit.  In my opinion the Employment Security Letter does not carve out employees who were full time and then part time from partaking in the same benefits of a laid off employee or downgraded employees.

(Opinion and Award at 12-13.)

On January 11, 2008, the Company initiated this lawsuit and petitioned the Court to vacate the Opinion and Award.  (Doc. 1.)  The Union now has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.

---

[2]  The Opinion and Award is attached to the Complaint as Exhibit D (doc. 1-5).

II.      **STANDARDS GOVERNING MOTION TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true."  Weiner v. Klais and Co., Inc., 108 F.3d 86, 88 (6th Cir.1997) (citing Bower v. Federal Express Corp., 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  Bower, 96 F.3d at 203.

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, --- U.S.----, 127 S.Ct. 1955, 1969 (2007).  To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  Id. at 1964-65.  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  Weiner, 108 F.3d at 88 (citing In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 127 S.Ct. at 1265.  The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face."  Id. at 1974.

III.     **ANALYSIS**

The Union contends that the Complaint fails to state a claim because the allegations

therein do not meet the standard for vacating an arbitration award under established controlling law.  Accordingly, before analyzing the Complaint, a brief review of the standard for a district court's review of an arbitrator's award is in order.

**A.** **Standards for Reviewing an Arbitration Award**

When terms of a CBA call for grieving before an arbitrator, a district court's review of the arbitrator's decision is very narrow.  The Sixth Circuit has called it "one of the narrowest standards of judicial review in all of American jurisprudence."  Lattimer-Stevens Co. v. United Steelworkers of America, 913 F.2d 1166, 1169 (6th Cir. 1990).  The narrowness of the review reflects the strong statutory preference for private settlement of labor disputes without government intervention.  United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37 (1987).  The Supreme Court has stated:

> The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute.  Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

Id. at 37-38.

"When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal quotation and citation omitted).  "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope

5

of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." <u>Misco</u>, 484 U.S. at 38.  However, an arbitration award "must draw its essence from the [collective bargaining agreement] and cannot simply reflect the arbitrator's own notions of industrial justice." <u>Id.</u>

In 2007, the Sixth Circuit, sitting *en banc*, took a fresh look at the Supreme Court precedents and instructed that district courts should ask the questions of "procedural aberration" that <u>Garvey</u> and <u>Misco</u> identify:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration?  Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?  And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"?

<u>Michigan Family Res., Inc. v. Service Empl. Int'l Union Local 517M</u>, 475 F.3d 746, 753 (6th Cir. 2007) (*en banc*) (quoting <u>Misco</u>, 484 U.S. at 38-39; <u>Garvey</u>, 532 U.S. at 509-10); <u>see also</u> <u>Truck Drivers Loc. No. 164 v. Allied Waste Sys., Inc.</u>, 512 F.3d 211, 216 (6th Cir. 2008) (same). The court stated that "[s]o long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made 'serious,' 'improvident' or 'silly' errors in resolving the merits of the dispute." <u>Michigan Family Res.</u>, 475 F.3d at 753.

Whether the arbitrator referred to, quoted, or analyzed provisions from the CBA is relevant to the issue of whether the arbitrator was arguably construing the contract, as are statements by the arbitrator that he or she is "doing anything other than trying to reach a good-faith interpretation of the contract." <u>Id.</u> at 754.  District courts should assume that the arbitrator was engaged in contract interpretation in cases of doubt. <u>Id.</u> at 753.  Courts cannot overturn even

a "serious legal error" made by an arbitrator so long as the arbitrator was arguably construing the

contract.  Id. at 756.  Under this Sixth Circuit standard, "only the most egregious awards [will]

be vacated."  Id. at 753.[3]

## B.     Application of the Standards to the Complaint

The Union contends that the Complaint does not assert sufficient grounds under the

Michigan Family Resources standard to vacate Arbitrator Feldman's Opinion and Award.  The

Company responds that the Complaint sufficiently alleges that Arbitrator Feldman was not

arguably construing the CBA when he resolved the dispute.  Michigan Family Res., 475 F.3d at

753.  Construing the allegations in a light most favorable to the Company, the Court finds that

the Complaint contains at least inferential allegations that Arbitrator Feldman failed to arguably

construe the contract or imposed his own notion of industrial justice.[4]  See Misco, 484 U.S. at 38

(on arbitrator imposing industrial justice); Michigan Family Res., 475 F.3d at 753 (on arbitrator

---

[3] The standard announced in Michigan Family Resources marks a departure from the previous Sixth Circuit standard in which district courts were to examine the following four factors: (1) whether the arbitrator's decision conflicts with express terms of the collective bargaining agreement; (2) whether the decision imposes additional requirements that are not expressly provided in the agreement; (3) whether the decision is without rational support or cannot be rationally derived from the terms of the agreement; and (4) whether it is based on general considerations of fairness and equity instead of the precise terms of the agreement.  See e.g., Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Loc. 135, 793 F.2d 759, 766 (6th Cir. 1986).

[4] Based on the these allegations, the Company is not asserting that Arbitrator Feldman "commit[ted] fraud, ha[d] a conflict of interest or otherwise act[ed] dishonestly in issuing the award."  Michigan Family Res., 475 F.3d at 753.

Also, the Company does not contend that Arbitrator Feldman "acted outside the scope of his authority."  Id.  Although the Complaint states that "Arbitrator Feldman clearly exceeded the scope of his authority," (doc. 1, Complaint ¶ 20), the Company is alleging there that the arbitrator exceeded his authority in the manner by which he resolved the dispute.  The Company does not assert the Arbitrator lacked authority to resolve the dispute.  In fact, the Company does not contest the Arbitrator's finding in the Opinion and Award that "[t[he parties stipulated and agreed that this matter was properly before the arbitrator."  (Opinion and Award at 3.)

7

construing the contract); <u>Weiner</u>, 108 F.3d at 88 (on inferential allegations); <u>Bower</u>, 96 F.3d at 203 (on inferences taken in favor of plaintiff).

The Complaint alleges the following:  (1) the arbitrator lacked authority to add to or modify the CBA; (2) the CBA does not preclude Cincinnati Bell from reducing the hours of employees without classifying them as part-time; (3) the CBA does not require Cincinnati Bell to provide administrative actions to employees with reduced hours; (4) the arbitrator exceeded the scope of his authority; and (5) the arbitrator engrafted a restriction on Cincinnati Bell that was not intended by the parties.  (Doc. 1, Complaint ¶¶ 10, 18-20.)  Examining the totality of the Complaint, the Court finds that it does state a claim upon which relief can be granted.

Additionally, the Court notes with interest that the seminal cases cited by the Union were not resolved at the pleadings stage.  <u>Michigan Family Resources</u> and <u>Truck Drivers Local No. 164</u> were resolved on motions for summary judgments, and <u>Misco</u> and <u>Garvey</u> were resolved on the merits as well.  Finally, the Court's holding herein is not intended to express any opinion on the ultimate issue as to whether the Court should vacate the Opinion and Award.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (doc. 3) is **DENIED.**

Additionally, pursuant to the parties' Joint Notice (doc. 9) filed on May 1, 2008, the

Court hereby **VACATES** the Preliminary Pretrial Conference set for May 28, 2008 and

**ORDERS** that the parties' cross-motions for summary judgment be filed by July 11, 2008.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge

9